# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

| | | |
|---|---|---|
| SANDRA L. STEVENS, on behalf of the ESTATE OF NICHOLAS VANBUREN, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 5:24-cv-00191 |
| PRIMECARE MEDICAL, INC., BETH WAUGH LPN, individually as an employee of PrimeCare, DUSTYN ISNER LPN, Individually as an employee of PrimeCare, LEEANN CHACON MA, individually as an employee of PrimeCare, JOHN/JANE DOE PRIMECARE EMPLOYEES, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

**COMES NOW**, Plaintiff, on behalf of the Estate of Nicholas VanBuren, by the undersigned counsel, and for his Complaint states and alleges as follows based upon personal knowledge and/or information and belief:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and under its authority to decide pendent state law claims pursuant to 28 U.S.C. § 1367.

2. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1988 and West Virginia state law.

1

3. Venue is proper because some Defendants can be served with process within the Southern District of West Virginia, Beckley Division, and because the incidents giving rise to this Complaint occurred within the Southern District of West Virginia, Beckley Division.

**PARTIES**

4. Plaintiff Sandra L. Stevens (hereinafter "Plaintiff") was at all times relevant hereto a resident of Greenbrier County, West Virginia.

5. Plaintiff is the executrix of the decedent, Nicholas VanBuren (hereinafter "Nicholas VanBuren").

6. Plaintiff was duly appointed as the Administrator of the Estate of Nicholas VanBuren on October 19, 2022, by the Fiduciary Supervisor of Greenbrier County, West Virginia.

7. Defendant PrimeCare Medical, Inc. is a Pennsylvania corporation with a principal place of business located at 3940 Locust Lane, Harrisburg, Pennsylvania, 17109.

8. PrimeCare Medical, Inc. will be referred to herein as "PrimeCare."

9. Defendant PrimeCare Medical, Inc. (hereinafter "PrimeCare") is a Pennsylvania corporation with a principal place of business located at 3940 Locust Lane, Harrisburg, Pennsylvania, 17109. PrimeCare Medical, Inc. is the parent company of PrimeCare Medical of West Virginia, Inc.

10. PrimeCare Medical of West Virginia, Inc. was responsible for providing medical care to inmates in Southern Regional Jail (hereinafter "SRJ") including Nicholas VanBuren. PrimeCare Medical of West Virginia, Inc. has filed for bankruptcy

protection. Plaintiff intends to amend this complaint to name PrimeCare Medical of West Virginia, Inc. as a defendant when the automatic stay is lifted.

11. Additionally, PrimeCare Medical of West Virginia, Inc. was at all relevant times an alter ego of PrimeCare Medical, Inc.. Upon information and belief:

    a. PrimeCare Medical Inc. comingled funds and other assets with PrimeCare Medical of West Virginia, Inc. including, for example, by purchasing insurance policies and paying insurance premiums on behalf of PrimeCare Medical of West Virginia, Inc.;

    b. PrimeCare Medical Inc. is the sole owner of PrimeCare Medical of West Virginia, Inc.;

    c. PrimeCare Medical of West Virginia, Inc. failed to maintain minutes, records, and other corporate formalities;

    d. PrimeCare Medical Inc. and PrimeCare Medical of West Virginia, Inc. are owned and managed by the same parties;

    e. PrimeCare Medical Inc. failed to adequately capitalize PrimeCare Medical of West Virginia, Inc. for the reasonable risks of its undertakings;

    f. PrimeCare Medical Inc. used PrimeCare Medical of West Virginia, Inc. as a mere shell or conduit to operate some particular aspect of its business;

    g. PrimeCare Medical of West Virginia, Inc. used the same offices, letterhead, policies and protocols, employees, attorneys, human resources department, and other resources as PrimeCare Medical Inc.;

    h. PrimeCare Medical Inc. actively managed the day-to-day operations of PrimeCare Medical of West Virginia, Inc. including, for example, by created

    routine employee schedules for employees of PrimeCare Medical of West Virginia, Inc.;

i. PrimeCare Medical of West Virginia, Inc. does not maintain its own website or other marketing operations and is otherwise represented to be the same enterprise as PrimeCare Medical, Inc.;

j. PrimeCare Medical Inc. and PrimeCare Medical of West Virginia, Inc. concealed the identity of PrimeCare Medical of West Virginia, Inc.'s ownership, management, and financial interests;

k. PrimeCare Medical Inc. disregarded legal formalities and failed to maintain a proper arm's length relationship with PrimeCare Medical of West Virginia, Inc.;

l. PrimeCare Medical Inc. manipulated assists and liabilities to concentrate assets in itself and liabilities in PrimeCare Medical of West Virginia, Inc.; and

m. PrimeCare Medical Inc. used PrimeCare Medical of West Virginia, Inc. to enter into a contract with the State of West Virginia in which agreed, among other things, to provide medical and health services to inmates in SRJ that complied with state law, federal law, and met the National Commission on Correctional Health Care's standards knowing that PrimeCare Medical of West Virginia, Inc. could not meet those standards; and

n. PrimeCare Medical Inc., therefore, used PrimeCare Medical of West Virginia, Inc. to contract with the State of West Virginia to avoid the risk of nonperformance of that contract.

12. PrimeCare Medical of West Virginia, Inc. entered into a contract with the State of West Virginia in which agreed, among other things, to purchase and maintain liability insurance policies applicable to its operations in SRJ. As noted above, however, PrimeCare Medical Inc. purchased insurance on behalf of PrimeCare Medical of West Virginia, Inc.

13. Defendant Beth Waugh, LPN (hereinafter "LPN Waugh") was at all times relevant hereto an employee of PrimeCare and was at all times relevant hereto acting within the scope of her employment as an LPN at SRJ.

14. LPN Waugh, who upon information and belief resides in Raleigh County, West Virginia, is sued only in her individual capacity

15. Defendant Dustyn Isner, LPN (hereinafter "LPN Isner") was at all times relevant hereto an employee of PrimeCare and was at all times relevant hereto acting within the scope of his employment as an LPN at SRJ.

16. LPN Isner, who upon information and belief resides in Ritchie County, West Virginia, is sued only in his individual capacity.

17. Defendant LeeAnn Chacon, MA (hereinafter "MA Chacon") was at all times relevant hereto an employee of PrimeCare and was at all times relevant hereto acting within the scope of her employment as a medical assistant at SRJ.

18. MA Chacon, who upon information and belief resides in Marion County, West Virginia, is sued only in her individual capacity.

19. Defendants John/Jane Doe Employees of PrimeCare are yet to be identified current and former employees of PrimeCare or its alter ego who worked at SRJ on or about April 14, 2022.

20. All Defendants, with the exception of PrimeCare, are sued up to the limits of the insurance policy(s) that provides liability coverage for their actions and omissions, or as otherwise permitted by law.

**FACTS**

21. Plaintiff incorporates herein by reference all preceding paragraphs of the Complaint as if set forth fully herein verbatim.

22. On approximately April 6, 2022, Nicholas VanBuren became incarcerated at Southern Regional Jail ["SRJ"] and was medically screened upon his arrival.

23. Upon information and belief, Nicholas VanBuren had a medical intake screening when he became incarcerated at SRJ, which should have caused Defendants to ask in depth questions regarding Mr. VanBuren's mental health.

24. During his incarceration, Mr. VanBuren was receiving medications, including 1mg of Klonopin, which is a medication that can treat mental health disorders, including but not limited to, panic disorders and anxiety.

25. Mr. VanBuren was ordered Klonopin on April 7, 2022 prescribed by Angela Nicholson MSN, APRIN, FNP-C and ordered by Defendant LPN Waugh.

26. Mr. VanBuren's medical records show that Klonopin was "cancelled" on April 10, 2022, for the reason "DC'd after cut date at transcriber's request 04-10-2022."

27. Mr. VanBuren was ordered six (6) doses of Klonopin. Mr. VanBuren, however, was only offered three (3) doses and only received one (1) dose.

28. Mr. VanBuren was prescribed Klonopin again ordered by Defendant Waugh, to begin on April 10, 2022 to last for two days at a lesser dose of 0.5mg. Mr. VanBuren only received two (2) doses.

29. Defendant Waugh ordered Klonopin 0.5mg yet again, with the dosing to begin on April 13, 2022. Mr. VanBuren only received one (1) dose.

30. A common side effect of Klonopin is suicidal ideation.[1] Side effects can include thoughts of suicide or self-harm, worsening mood, and feelings of depression.

31. On April 14, 2022, Mr. VanBuren was found hanging in his cell at approximately 5:37 pm.

32. Correctional Officers that found Mr. VanBuren removed the bed sheet tied around Mr. VanBuren's neck and laid him down on the cell floor.

33. Defendants arrived at Mr. VanBuren's cell at approximately 5:38 pm, where Mr. VanBuren was lying on the floor.

34. Defendant LPN Isner noted in Mr. VanBuren's medical chart that upon arrival, Mr. VanBuren was cyanotic, unresponsive, and pulseless.

35. CPR was initiated at 5:39 pm and continued until EMS arrived at the facility.

36. Defendants administered Narcan, oxygen, Epinephrin, and utilized an ambu bag while awaiting EMS. Defendants also placed an AED on Mr. VanBuren which advised not to shock.

37. EMS arrived at approximately 5:56 pm and continued lifesaving measures on Mr. VanBuren as they transported him to Raleigh General Hospital.

38. Mr. VanBuren later succumbed to his injuries and died as a result of his hanging on April 14, 2022, at Raleigh General Hospital at 6:29 pm.

39. Mr. VanBuren was not appropriately screened or observed during his incarceration at SRJ by Defendants.

---

[1] See, https://my.clevelandclinic.org/health/drugs/19749-clonazepam-tablets; drugfree.org

40. Defendants and John/Jane Doe Employees of PrimeCare observed Mr. VanBuren at a minimum during "pill pass" throughout Mr. VanBuren's incarceration.

41. Defendants and John/Jane Doe Employees of PrimeCare failed to properly observe Mr. VanBuren while he was taking Klonopin, a drug with a common side effect of suicidal ideation.

42. PrimeCare Medical Inc.'s Suicide Prevention and Intervention Policy requires that "A written plan for identifying and responding to suicidal individuals be developed, implemented when needed, and reviewed periodically by all PCM staff members." This Policy further states that "PCM also endorses the philosophy that every effort will be made to prevent suicides and serious suicide attempts through identification of individuals at risk for suicide through implementation of this policy and its associated procedures."

43. According to PrimeCare's Policy, "Suicidal behavior is more likely at critical periods of time including commitment and the first several days thereafter, court hearings, sentencing, new criminal charges, after adjudication, following the receipt of and news regarding self or family, after suffering some type of humiliation or rejection, and when the patient is in the early stages of recovery from severe depression."

44. Defendants were not properly trained in identification, assessment, monitoring, and intervention of suicide in the correctional setting.

45. Specifically, for CorEMR facilities such as SRJ, under the intake suicide screening form, nurses are tasked with reviewing the patient's suicide screening score and refer those patients to a mental health provider.

46. Upon information and belief, Mr. VanBuren was never referred to a mental health provider.

47. Defendants failed to identify Mr. VanBuren as a patient at risk for suicide and did not follow the appropriate treatment or protocols, including but not limited to, housing Mr. VanBuren where he could be regularly observed and in a room "suicide-proof as possible (without protrusions of any kind that would enable a hanging)," as stated in PrimeCare's Policy.

## CAUSES OF ACTION

### COUNT 1 – FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983
### (Deliberate Indifference to Serious Medical Needs)

48. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

49. Defendants, while acting under color of law and within the scope of their employment, had actual knowledge of Mr. VanBuren's serious, life-threatening medical needs.

50. Defendants were deliberately indifferent to, and willfully ignored, the serious medical needs of Mr. VanBuren as described above.

51. Defendants were both objectively and subjectively aware of the risk of serious harm posed by ignoring or otherwise failing to properly address Mr. VanBuren's safety concerns, health concerns, and serious medical needs.

52. The actions of Defendants, described hereinabove, were not taken in good faith, were objectively unreasonable, and were in violation of clearly established law.

53. During the time period at issue, it was clearly established that failing to promptly provide necessary and reasonable medical treatment to inmates at SRJ, as described hereinabove, violated the United States Constitution.

54. PrimeCare, through their employees, deprived Mr. VanBuren of his Fourteenth Amendment rights by and through its official policies, practices, or customs, *inter alia*, PrimeCare policies and procedures, PrimeCare's Acceptance of Terms & Conditions, and the National Commission on Correctional Healthcare's Jail and Prison Standards.

55. PrimeCare, through its employees, deprived Mr. VanBuren of his Fourteenth Amendment rights by and through its de facto policies, practices, or customs, including, but not limited to, PrimeCare employees' failure to identify Mr. VanBuren as a patient at risk for suicide; failure to follow the appropriate treatment or protocols, including but not limited to, housing Mr. VanBuren where he could be regularly observed and in a room "suicide-proof as possible (without protrusions of any kind that would enable a hanging)," as stated in PrimeCare's Policy; failure to properly train their employees in identification, assessment, monitoring, and intervention of suicide in the correctional setting; failure to properly observe Mr. VanBuren while he was taking Klonopin, a drug with a common side effect of suicidal ideation; failure to appropriately screen or observe Mr. VanBuren during his incarceration at SRJ; and failure to follow PrimeCare policies, including but not limited to, PrimeCare's Suicide Intervention and Prevention Policy.

56. Specifically, Defendants deprived Mr. VanBuren's constitutional rights by and through their omissions, such as their failure to properly train their employees as described

hereinabove, that manifested deliberate indifference to Mr. VanBuren during his incarceration.

57. The actions of Defendants, described hereinabove, shock the conscience.

58. The actions of Defendants, described hereinabove, were unlawful and unjustified.

59. As a direct and proximate result of Defendants' unlawful, unjustified, and unconstitutional actions, Mr. VanBuren suffered a deprivation of his constitutional rights and physical harm, physical pain and discomfort, and death.

60. In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

61. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. VanBuren, thereby justifying an award of punitive damages.

## COUNT 2- PROFESSIONAL MEDICAL NEGLIGENCE

62. Plaintiff incorporates herein by reference all preceding paragraphs of the Complaint as if set forth fully herein verbatim.

63. PrimeCare, through its agents and employees, owed Mr. VanBuren a duty of care under West Virginia's Medical Professional Liability Act ("MPLA"), West Virginia Code § 55-7B-1, *et seq.* as the applicable health care provider for Plaintiff.

64. PrimeCare contracted with the State of West Virginia to provide inmates like Mr. VanBuren with constitutionally adequate healthcare which meets the applicable standard of care.

65. PrimeCare owed a duty of care to Nicholas VanBuren to properly evaluate his condition and provide him with care which met the standard of care.

66. PrimeCare owed a duty of care to Nicholas VanBuren to perform all appropriate testing and examinations and to make all appropriate referrals in an effort to formulate an appropriate diagnosis and treatment plan.

67. PrimeCare owed a duty of care to Nicholas VanBuren to make the appropriate diagnosis of his condition and then advise him of medical treatments that would be in his best medical interest.

68. PrimeCare breached this duty of care to Nicholas VanBuren in that, without limitation, it failed to monitor his condition, provide him appropriate psychological or psychiatric care, prescribe him proper medications, make the appropriate diagnosis, and advise Mr. VanBuren of the medical treatment that would be in his best medical interest.

69. PrimeCare and its employees and agents herein deviated from the standard of care as set more fully herein, resulting in deliberate indifference to the serious medical needs of Mr. VanBuren.

70. PrimeCare and its employees and agents deviated from the standard of care by failing to enforce NCCHC standards and its own policies and procedures, which resulted in Mr. VanBuren's death.

71. PrimeCare, through its agents and employees, knew or should have known that deviating from the appropriate standard of care, as described hereinabove, could result in serious injury or death to their patients, including Mr. VanBuren.

72. Defendants' failure to follow the accepted standard of care deprived Mr. VanBuren of a chance of recovery and increased his risk of harm, which was a substantial factor in bringing about his pain, suffering, and untimely death.

73. As a direct and proximate result of the Defendants' negligent, careless and reckless conduct, Mr. VanBuren suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

74. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. VanBuren, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

75. By their actions and inactions set forth herein, Defendants failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances.

76. PrimeCare is vicariously liable for the actions and omissions of its employees committed within the scope of their employment.

## COUNT 3 – NEGLIGENT HIRING

77. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

78. At all times relevant hereto, PrimeCare owed inmates at SRJ, including Mr. VanBuren, a duty of care.

79. PrimeCare owed inmates at SRJ, including Mr. Vanburen, a duty to not negligently hire employees and place them in position of power and authority where they can cause harm or injuries to others.

80. Upon information and belief, PrimeCare did not conduct a reasonable investigation into the background of their Employee Defendants and did not adequately assess the possible risk of harm or injury to third-parties that could result from the conduct of their Employee Defendants if they were employed at SRJ.

81. Upon information and belief, PrimeCare's Employee Defendants had a history of prior negligent acts and misconduct, including but not limited to, medical neglect and deliberate indifference to, and willfully ignoring, the health, safety, and serious medical needs of inmates.

82. Upon information and belief, had PrimeCare conducted a reasonable investigation into the background of their Employee Defendants, they would have discovered that their Employee Defendants had a history of negligent acts and misconduct.

83. Upon information and belief, had PrimeCare conducted a reasonable investigation into the background of their Employee Defendants, their negligent acts described hereinabove could have been prevented.

84. As a direct and proximate result of PrimeCare's negligent conduct, Mr. VanBuren suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

85. The actions of PrimeCare were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. VanBuren, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT 4– NEGLIGENT SUPERVISION AND TRAINING

86. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

87. At all times relevant hereto, PrimeCare owed inmates at SRJ, including Mr. VanBuren, a duty of care.

88. PrimeCare owed inmates at SRJ, including Mr. VanBuren, a duty to properly and adequately supervise and train their employees, especially those in positions of power and authority, to prevent them from negligently causing harm or injuries to others, and to identify patients at risk for suicide.

89. Upon information and belief, PrimeCare's Employee Defendants were not properly trained or adequately supervised at SRJ.

90. Upon information and belief, PrimeCare's Employee Defendants were not properly or adequately trained at SRJ.

91. Upon information and belief, PrimeCare's negligent supervision and training of their Employee Defendants allowed them to freely commit the negligent acts described hereinabove.

92. Upon information and belief, had PrimeCare properly and adequately supervised and trained their Employee Defendants, their negligent acts described hereinabove could have been prevented.

93. As a direct and proximate result of PrimeCare's negligent conduct, Mr. VanBuren suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

94. The actions of PrimeCare were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. VanBuren, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT 5– NEGLIGENT RETENTION

95. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

96. At all times relevant hereto, PrimeCare owed inmates at SRJ, including Mr. VanBuren, a duty of care.

97. PrimeCare owed inmates at SRJ, including Mr. VanBuren, a duty to not negligently retain unfit employees, especially those in position of power and authority, who have engaged in negligent or otherwise wrongful conduct.

98. Upon information and belief, PrimeCare's Employee Defendants had a history of prior negligent acts and misconduct, including but not limited to, medical neglect and deliberate indifference to, and willfully ignoring, the health, safety, and serious medical needs of inmates.

99. Despite these aforementioned negligent acts, as described hereinabove, PrimeCare Employee Defendants were retained.

100. Upon information and belief, PrimeCare knew or should have known that their Employee Defendants were unfit, but retained them anyway.

101. Upon information and belief, PrimeCare could have reasonably foreseen the possible risk of harm or injury to others that could result from the conduct of their unfit Employee Defendants.

102. Upon information and belief, had PrimeCare not negligently retained their Employee Defendants, their negligent acts described hereinabove could have been prevented.

103. As a direct and proximate result of PrimeCare's negligent conduct, Mr. VanBuren suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

104. The actions of PrimeCare were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. VanBuren, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

**WHEREFORE**, Plaintiff demands judgment against Defendants, in an amount exceeding the minimum jurisdictional limit of this Court, and in such sums as will fairly and fully compensate Plaintiff for her losses, injuries, and damages proximately caused by the wrongful conduct of Defendants, together with pre and post judgment interest, for reasonable attorneys' fees and costs for the prosecution of this action, for punitive damages, and for any further relief this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

                                            **SANDRA STEVENS, on behalf of the ESTATE OF NICHOLAS VANBUREN**

                                            **By Counsel**

                                            *s/*Stephen P. New
                                            Stephen P. New (WVSB No. 7756)
                                            Emilee B. Wooldridge (WVSB No. 14310)
                                            Stephen New & Associates
                                            430 Harper Park Drive
                                            Beckley, West Virginia 25801
                                            Ph: (304) 250-6017
                                            Fax: (304) 250-6012
                                            steve@newlawoffice.com
                                            emilee@newlawoffice.com